UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| BEAZER HOMES CORP., | Civil Action No.: 4:09-cv-1327-TLW-TER |
| Plaintiff, | |
| -vs- | **REPORT AND RECOMMENDATION** |
| AMERICAN RESIDENTIAL SERVICES, LLC d/b/a American Residential Services of South Carolina, Inc.; UNIVERSAL FOREST PRODUCTS EASTERN DIVISION, INC.; and WEAVER CO., INC., | |
| Defendants. | |

## I.  INTRODUCTION

This litigation arises out of the construction of the St. Andrews Townhomes Horizontal Property Regime condominium project (the project). Plaintiff Beazer Homes Corp. is the successor in interest to the original developer of the project. Defendants are subcontractors involved in the project. Presently before the Court is Plaintiff's Motion to Consolidate Actions and to Compel Arbitration and Stay Proceedings (Document # 5).[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636. This Report and Recommendation is entered for review by the district judge.

## II.  FACTUAL ALLEGATIONS

In January of 2009, the St. Andrews Townhomes Homeowners' Association, Inc. and the St.

---

[1]Other motions are also pending. However, if this case is subject to mandatory arbitration, the Court lacks jurisdiction over this action. Thus, it is necessary to address the jurisdictional issue first.

Andrews Townhomes Horizontal Property Regime (the Owners) initiated a lawsuit[2] against Beazer Home Corp. (Beazer), Plaintiff in the present action, concerning alleged construction defects and deficiencies. Beazer alleges that, to the extent the Owners have suffered any recoverable damages as claimed in the related action, such damages are attributable to Defendants in the present action, as subcontractors on the project. Complaint ¶ 13. Beazer asserts causes of action for negligence, breach of contract, contractual indemnification, breach of express/implied warranties, and arbitration.

## III. ARBITRATION AGREEMENT

Beazer contracted with numerous subcontractors and suppliers, including Defendants, to provide labor, services and materials for the construction of the project. Each of the contracts between Beazer and Defendants (the "Subcontracts"), contained the following mandatory arbitration provision:

> Mandatory Binding Arbitration: This provision covers any and all claims or disputes between SUBCONTRACTOR and BUILDER, or parties acting on BUILDER'S behalf, arising out of or relating, directly or indirectly, to SUBCONTRACTOR's performance of the Work, the Agreements, or any breach thereof, whether in tort or in contract, provided, however, that the arbitrator is not authorized to hear or decide any class arbitration proceeding. All such claims and disputes shall be resolved by binding arbitration held in the county and state in which the Project is located, pursuant to the procedures described in this section. . . . Upon its request, the BUILDER shall be entitled to consolidation or joinder of any arbitration involving the BUILDER or SUBCONTRACTOR with related arbitrations involving other parties, including trade SUBCONTRACTORS.

Subcontracts (attached as Exhibits A-C to Response in Support (Document # 29)).

## V. DISCUSSION

The purpose of the Federal Arbitration Act (FAA) "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by

---

[2]Civil Action No. 4:09-cv-0382-TLW-TER

American courts, and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). The FAA "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). While Congress considered the advantage of expeditious resolution of disputes through arbitration in enacting the FAA, its primary purpose was to enforce agreements into which parties have entered. Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468, 478 (1989).

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer, 500 U.S. at 26. The "liberal federal policy favoring arbitration agreements manifested by this provision and the Act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual arrangements; the Act simply 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.'" Mitsubishi, 473 U.S. at 625 (citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983)).

Initially, the Court must decide if it is proper to resolve the dispute through arbitration. The Court should "engage in a limited review to ensure that the dispute is arbitrable – i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Hooters of America, Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999). In determining the scope of an arbitration provision, the court must look to the factual allegations of the complaint in order to ascertain whether the claims alleged touch a concern or matter covered by the arbitration provision. See J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile,

S.A., 863 F.2d 315, 319 (4th Cir.1988) (noting that the arbitrability determination centers on "whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim"). Courts are to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration with a healthy regard for the federal policy favoring arbitration. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985)).

The contracts between Beazer and the subcontractors each require that any and all claims between the subcontractors and the builder, Beazer, arising out of or relating, directly or indirectly, to the subcontractors' performance of their work on the project or the subcontracting agreement be resolved through binding arbitration. Beazer's claims clearly fall within this provision. A court should not deny a request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The arbitration clauses at issue in this action clearly cover the asserted disputes. Accordingly, this action should proceed to arbitration.

**V.  CONCLUSION**

For the reasons discussed above, the claims raised in the action are subject to binding arbitration. Beazer seeks to compel arbitration and stay this action. However, because all the claims asserted by Beazer are subject to binding arbitration, dismissal of this action is appropriate to pursue arbitration. Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F. 3d 707, 709-10 (4th Cir. 2001). Therefore, it is recommended that Plaintiff's Motion to Consolidate Actions and to Compel

Arbitration and Stay Proceedings (Document # 5) be granted in part.[3] In addition, it is recommended that this case be dismissed in its entirety.

                                                       s/Thomas E. Rogers, III
                                                       Thomas E. Rogers, III
                                                       United States Magistrate Judge

February 18, 2010
Florence, South Carolina

---

[3] Because this action is subject to mandatory arbitration, other issues, including the request to consolidate, are for the arbitrator.